This application was made on March 5, 1915, two months after the play was first produced. It is not claimed on the part of the plaintiff that the play has any connection with the story written by him. The plaintiff's story is based upon the exploits of a detective, while the Niccodemi play produced by the defendant has reference to the story of a wife, incurable with paralysis, having cast across her life the shadow of her husband's infidelity. It appears from the certificate of the Librarian of Congress that the title "The Shadow" has been used for many years, and that there are now in his office certificates showing the use of the title "The Shadow" in seven plays or dramas, the first of which was filed on the 19th day of February, 1879, and the last on February 12, 1914; that in addition thereto it appears that the title "The Shadow" has been used on a great many occasions in articles published in the Century, Harper's, and other magazines. There are also affidavits by well-known dramatists showing that the title was used in plays more than 40 years ago. Plaintiff has utterly failed to make out a case to entitle him to injunctive relief.

Motion denied.

---

KAYNER v. BROWN, Town Superintendent of Highways, et al.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1915.)

HIGHWAYS ⬅79—ABANDONMENT—CERTIFICATE OF ABANDONMENT—VALIDITY.
Where a public highway, designed to afford the public access to a lake constituting public property, was used continuously as much as it was contemplated by those laying it out, a certificate by the town superintendent of abandonment of the highway was a nullity.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 279, 281–287; Dec. Dig. ⬅79.]

Appeal from Special Term, Niagara County.

Action by C. Adell Kayner against Elmer L. Brown, as Town Superintendent of Highways in and for the Town of Newfane, County of Niagara, State of New York, and another. Complaint dismissed, and plaintiff appeals. Affirmed.

The following is the report of Referee Hickey:

This is an action to determine the title to certain real estate in the village of Olcott, town of Newfane, Niagara county, N. Y. Running northerly through the town of Newfane from the Ridge road, so called, to Lake Ontario, following generally the course of the Eighteen Mile Creek, so called, is a public highway, known as the Creek road. This is one of the oldest highways of the county. The village of Olcott, a summer resort, on the south shore of Lake Ontario, is divided by the creek, above mentioned, into two parts connected by a bridge which, with its approaches, is upwards of 20 rods in length. The road referred to above strikes the lake a few rods east of this creek, in the heart of the village, and is the main highway leading into the village from the south.

At some remote period of time the high bank of the lake at the point of its intersection with this highway was excavated in such a way as to afford access to the waters of the lake at a grade of approximately 17 per cent. The grade begins at the north line of Ontario street, in the village of Olcott. O tario street crosses at right angles the Creek road, which in the village (

Olcott is known as Lockport street. From the north line of Ontario street to the beach of the lake is 87 feet, and to the water's edge 115 feet. Lockport street, through the village of Olcott, is 99 feet in width. There is no other ancient highway leading to the waters of the lake on the east side of the creek referred to, in the village of Olcott, or for some miles east of there. There has been, however, for some years back, a strip of land 25 feet in width extending from Ontario street to the lake, which has been used more or less by the public, but whether or not it has become a public highway is not entirely clear. This 25-foot strip lies westerly of the locus in quo, and between the locus in quo and the creek hereinbefore referred to. There are no other highways, or so-called highways, leading to the beach or waters of the lake on the east side of the creek.

On or about the 29th day of August, 1910, the town superintendent of highways of the town of Newfane filed in the town clerk's office a notice or certificate of abandonment of that part of Lockport street lying north of Ontario street. Although the superintendent was sworn upon the trial as a witness, he threw little or no light upon the question of why he filed this certificate. From the testimony, however, of the county superintendent of highways, it appears that the town superintendent sought his advice in respect to certain complaints that had been made to him concerning an alleged nuisance in that portion of the street claimed to have been abandoned, and the erection thereon of a shack, which it was claimed was being used for unlawful purposes. The county superintendent says he asked the town superintendent if this portion of the street had been used during the six years immediately preceding, and he thought the town superintendent said it had not. Thereupon he advised the filing of a certificate of abandonment, which advice was carried out by the town superintendent. Later the county superintendent of highways claims to have learned that the street had been used more or less during the preceding six years, and he thereupon ordered the town superintendent then in office to reopen the street. This the superintendent proceeded to do.

In the meantime plaintiff, being the owner of the abutting property on the east of the portion claimed to have been abandoned, took possession of the east half of Lockport street, north of Ontario street, and built or placed thereon a small cottage. His contention is that he owned the fee to the middle of the street, subject to the use of it by the public as a highway, and that when the street or highway was abandoned there was a reversion to him of the land, free from the easement, and he brings this action to have his rights in the premises determined. The town superintendent defends on the ground that the street had been used more or less generally during the six years immediately preceding the filing of the certificate of abandonment, and therefore said certificate was ineffective and a nullity.

It is manifest that the locus in quo, when first laid out as a public highway, was designed to afford the public a means of access to the beach and to the waters of the lake; the lake itself being public property. In other words, it was designed to afford the public a means of coming to its own. As private property cannot be used by the public, except with the owner's consent, as a means of reaching public property, it was therefore the part of wisdom in those who originally laid out the Creek road to carry it flush to the water's edge. And although it must have been apparent from the beginning that this particular portion of the highway would not be used extensively for vehicular traffic, it was nevertheless a convenience and a public need that it would have been almost criminal not to have supplied. It can hardly be said that the locus in quo is a cul-de-sac, as urged by counsel for plaintiff, for its leads, not to private, but to public, property; in fact, it leads to Lake Ontario, one of the great natural highways of the continent.

All things considered, nothing short of a case absolutely free from doubt could justify closing this highway, which from time immemorial has afforded the public a means of access to the waters of the lake. Such a case has by no means been made out. In fact, the evidence tends to show that during the six years immediately preceding the filing of the certificate of abandonment the locus in quo was used probably as much as it ever had been since it was first opened, and as much as it was ever contemplated by those who laid it out that it would be used.

It follows that the filing of the certificate of abandonment was a nullity, and the complaint must be dismissed, with costs.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

John Alan Hamilton, of Buffalo, for appellant.
Lee & Ward, of Lockport, for respondents.

KRUSE, P. J. Judgment affirmed, with costs. All concur.

---

PEOPLE ex rel. McDONNELL v. PRENDERGAST, City Comptroller, et al. (No. 7032.)

(Supreme Court, Appellate Division, First Department. April 23, 1915.)

1. EXECUTORS AND ADMINISTRATORS ⬤⟹24 — PUBLIC ADMINISTRATOR — APPOINTMENT OF STENOGRAPHER—STATUTORY PROVISIONS.

Under Laws 1912, c. 548, as amended by Laws 1913, c. 825, authorizing the surrogate of Bronx county to appoint a public administrator of the county with powers within the county, conferred on the public administrator of the county of New York, with an annual salary and allowance for services and expenses as are allowed to the county treasurer under Code Civ. Proc. § 2668, providing that a county treasurer when acting as a public administrator shall be allowed on the settlement of his accounts for his expenses as other administrators and for his services double the commissions allowed them by law, and Laws 1898, c. 230, providing for the discharge of the office of public administrator of the county of New York by an assistant public administrator and vesting in the public administrator the appointment and removal of his subordinates, the public administrator of the county of Bronx has no authority to appoint a stenographer and typewriter in his office for a compensation to be paid out of the funds of the city of New York.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–140; Dec. Dig. ⬤⟹24.]

2. EXECUTORS AND ADMINISTRATORS ⬤⟹24—PUBLIC ADMINISTRATOR—APPOINTMENT OF STENOGRAPHER—STATUTORY PROVISIONS.

The authority conferred on the board of estimate and apportionment by Laws 1912, c. 548, § 4, as amended by Laws 1913, c. 266, prescribing the salaries of elective officers of the county of Bronx and declaring that except as provided the positions, terms, grades, salaries, and compensation of all members who may be appointed shall be fixed by the board of estimate and apportionment of the city of New York, and shall be audited and paid in the manner provided for the audit and payment of salaries of all county officers, is limited to appointees of elective officers named in the section, and the duties performed by the public administrator of the county of Bronx and for which he receives a salary and fees are not embraced in the public offices to which the section relates, and the public administrator may not appoint a stenographer and typewriter in his office to be paid by the city of New York at a compensation fixed by the board of estimate and apportionment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–140; Dec. Dig. ⬤⟹24.]

Ingraham, P. J., and Scott, J., dissenting.

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of Elizabeth M. McDonnell, against William A. Prendergast, as Comptroller of the City of